———————o———————

## No. 4240.

### (Court of Appeal, Parish of Orleans.)

### CARSTAIRS, McCALL & CO. vs. CLERC Co. LTD.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "D."

J. Zach Spearing, for Plaintiff and Appellant.

F. F. Tessier, for Defendant and Appellee.

DUFOUR, J. The plaintiffs, whiskey distillers of Philadelphia, sue the defendant, a local corporation formerly carrying on a wholesale liquor business and now in liquidation, for the price of certain wrappers, caps, corks and labels ordered of plaintiffs by defendants, which, the former claim, the latter promised to pay for in case they ceased to use or sell plaintiff's brand of whiskey. The suit is based on a verbal contract made in November, 1904, between Omichen, a representative of the plaintiffs, and Dupuy, the manager of the defendant company.

Omichen's testimony is to the following effect:

"The arrangement was that, in the event they ceased handling our wihskey, they would take off of our hands our balance in stock of labels, caps, etc. That was the arrangement we had with the Clerc Company."

Dupuy states his version of the agreement as follows:

"About November, 1904, Omichen came to see me on several occasions. I was then in charge of the purchasing for the Clerc Co.; in fact, I was the manager of the concern. Mr. Omichen was then soliciting business for Carstairs, McCall & Co., and was very anxious to have their whiskies placed with our house. I agreed to give him an order for the stuff and he then agreed to furnish all of the labels, caps, bottles and everything of that kind necessary to put up the goods and place them with us. The understanding was that they should pay for these things and send them to us free of charge. The only consideration or condition was, that, should we at any time choose to take our bottling away from them and give it to some one else or to do our own bottling, then we were to pay for the labels that Carstairs, McCall & Co. would have left on their hands. ........ We were to buy their whiskey with the distinct understanding that they were to furnish the caps, labels, etc., free of charge, just like all other whiskey houses would do."

Dupuy's version is corroborated by a letter written by plaintiffs on December 7th, 1904, which shows what their contemporaneous appreciation of the nature of the contract was.

They say: "We are glad to hear through Mr. Omichen that *should you at any time decide to do your own bottling,* you will take all the caps, labels, tissue wrappers, etc." Defendant gave plaintiffs one order in November, bought no whiskey from any other dealers, and went out of business in May, 1905.

We find no ground for plaintiffs' claim.

The defendants did not bind themselves to continue in business for any definite time, but merely to handle plaintiffs' goods while in business, and to pay for the labels in case they should decide to withdraw their bottling from plaintiffs.

We cannot adopt the theory of counsel that defendants, having by their withdrawal from business, made the labels, etc., useless to plaintiffs, should pay for them.

Their agreement does not warrant such a view, but we think it more reasonable to infer that in order to sell their goods, the plaintiff did as other dealers, and furnished the labels, etc., with the expectation, but not the contractual assurance, that defendants would remain in business and prove profitable customers.

Judgment affirmed.